# Tibbs v. Alabama Great Southern Railroad Co.

*Action against Railroad Company by Brakeman for Personal Injuries.*

1. *Action against a railroad company; negligence of conductor; contributory negligence.*—In an action brought against a railroad company by a brakeman to recover damages for personal injuries, alleged to have resulted from the negligence of the conductor, it was shown that it was the purpose of the trainmen to leave some of the cars on a side track, and that the conductor had given the plaintiff orders for such disposition of the cars, which orders the plaintiff had communicated, by direction of the conductor, to the engineer; and these orders required the engineer to leave the detached cars on the side track and go forward with the engine and the remaining cars upon the main line; that the plaintiff, acting under the orders of the conductor, uncoupled from the train the cars to be left on the side track, and signalled the conductor to go ahead, which signal the conductor conveyed to the engineer, and the train was moved forward. The detached cars being on a down grade began to move forward, and the plaintiff, upon discovering this fact, stepped in front of them to turn the air valve in order to set the air brakes, which was an efficient method of stopping the cars. Upon the conductor seeing the detached cars moving forward, he signalled the engineer to stop the train, without notifying the plaintiff. While the plaintiff was attempting to turn the air valve upon the detached cars, as they were moving forward, he had his back to the cars attached to the engine, and did not know they had been stopped. The detached cars ran against the cars attached to the engine, which had been stopped in obedience to the orders of the conductor, resulting in injury to the plaintiff. *Held:* That the plaintiff was not guilty of contributory negligence, having no reason to apprehend that the other cars had been stopped on the track, and that he was entitled to recover.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

29

[Tibbs v. Alabama Great Southern Railroad Co.]

This action was brought by the appellant, Samuel F. Tibbs, against the appellee, the Alabama Great Southern Railroad Company, to recover damages for personal injuries, alleged to have been inflicted by reason of the negligence of the defendant or its employés.

The complaint contained six counts. The negligence complained of in the sixth count of the complaint is sufficiently stated in the opinion. The defendant pleaded the general issue and contributory negligence. The facts of the case are sufficiently stated in the opinion.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence, judgment was rendered for the defendant. The plaintiff prosecutes the present appeal from this judgment, and assigns the rendition thereof as error.

BOWMAN & HARSH, for appellant.—The conductor or engineer was negligent in stopping the engine and cars attached.—*L. & N. R. R. Co. v. Baker,* 106 Ala. 624; *Chicago &c. R. R. Co. v. Bingenheimer,* 116 Ill. 226; *Campbell v. N. Y. &c. R. R. Co.,* 35 Hun 506; *Chicago Roll. Mill Co. v. Johnson,* 114 Ill. 57; 4 Amer. & Eng. Encyc. of Law, 40 and note, 59 and note 3; *Pringle v. Chicago &c. R. R. Co.,* 18 Amer. & Eng. R. R. Cas. 91.

Plaintiff was not guilty of contributory negligence.— *L. & N. R. R. Co. v. Baker,* 106 Ala. 624; *A. G. S. R. R. Co. v. Richie,* 99 Ala. 346; *Tenn. C., I. & R. R. Co. v. Herndon,* 100 Ala. 451; *B. M. R. R. Co. v. Jacobs,* 101 Ala. 149.

The conductor, in giving the signal to stop without informing plaintiff, and knowing the plaintiff was between the cars, was guilty of reckless and wanton or intentional negligence.—*L. & N. R. R. Co. v. Watson,* 90 Ala. 68; *G. P. R'way Co. v. O'Shields,* 90 Ala. 29; *Hissong v. R. & D. R. R. Co.,* 91 Ala. 514; *Newport N. & M. V. R. R. Co. v. Deutzel,* 14 S. W. Rep. 958; *L. & N. R. R. Co. v. Robinson,* 16 S. W. Rep. 707.

A. G. SMITH, *contra.*—Under the authority of *A. G. S. R. R. Co. v. Richie,* 99 Ala. 346, the plaintiff was not entitled to recover.

The evidence showed that the plaintiff could have stopped these cars by getting on top of the car and putting on the hand brake. This was oviously the less

dangerous of the two, and it is a settled law in this State, that if there are two ways of discharging a service, the one less dangerous than the other, the employé must select the less dangerous of the two.—*R. R. Co. v. Walters*, 91 Ala. 435 ; *R. R. Co. v. Orr*, 91 Ala. 548 ; *R. R. Co. v. Holborn*, 84 Ala. 137 ; *R. R. Co. v. Graham*, 94 Ala. 545 ; *R. R. Co. v. George*, 94 Ala. 199. If the plaintiff had selected the least dangerous way of stopping these cars, and had gone on top of the cars and put on the hand brake instead of putting his body in between the draw-heads in reaching after the air cock, he could not have been hurt.

HEAD, J.—One count of the complaint alleges that plaintiff's injuries complained of resulted from the negligence of the conductor in causing or allowing two parts of a train to come together while plaintiff was between said parts, performing duties of a brakeman. It was the purpose of the trainmen to leave some of the cars of the train on a side track, and the train was stopped for that purpose. Plaintiff uncoupled the cars desired to be left, and (taking the testimony of defendant's witnesses as far as there is conflict) he then gave to the conductor, who was standing on the ground near the train, in view of the engineer on the engine, the go-ahead signal ; and the conductor at once communicated it to the engineer, who at once moved forward the engine with the remaining cars attached. As soon as this was done, the plaintiff discovered that, by some defect in the ratchet of the brake, the detached cars (being on a slight down grade) began, of their own momentum, to move forward, and, in order to stop them, he at once stepped to the air cock located on the front end of the front detached car, near the draw-head, to fix it, so that it would put on the air brake. This was an efficient method of stopping the cars. The plaintiff, when he did this, and while trying to fix the air cock, evidently had his back to the front, in the way the engine and cars had moved, so as not to see in that direction. As the plaintiff stepped to the air cock, the conductor, from his position above mentioned, saw that the detached cars were moving, and saw plaintiff, and knew that he was so placed that, upon the cars coming together, he would be between the cars, though he says, he did not know he was so situated as that, up-

on the cars coming together, he would be between the draw-heads. The conductor, seeing this, signalled the engineer to stop, and he immediately obeyed. The engine and attached cars, when so stopped, moved only a few feet. The detached cars continued to move (the plaintiff still endeavoring to fix the air cock), until they came in collision with the attached cars just stopped, in obedience to the conductor's signal, as aforesaid. The conductor gave the plaintiff no notice or warning of his purpose to stop the train. He (the conductor) had just previously given the plaintiff orders for the disposition of the cars of the train there, which orders the plaintiff had communicated, by direction of the conductor, to the engineer; and those orders required the engineer to leave these detached cars on the side track, and go forward with the engine and remaining cars to the main line, and thence on a side track, on the opposite side of the main line; and the engineer was in the act of obeying these orders when he was signalled by the conductor to stop, as aforesaid. So that the plaintiff had no cause to apprehend that the engine and attached cars would be stopped only a few feet from where the uncoupling had been effected; and being engaged in the effort to fix the air cock to. prevent the detached cars from moving, which necessitated such a relation of his body to the air cock as prevented his seeing forward, it is evident he did not see the attached cars, or know they had been stopped on the track. The conductor knew all these conditions, and saw, or was negligent if he did not see, the plaintiff's peril.

When we had this case under consideration formerly, we thought, as the city court evidently did, that it came within the principle of *Railroad Co. v. Richie*, 99 Ala. 346, and that plaintiff was negligent, because the proof showed he could have done the work of fixing the air cock without placing himself in front of the draw-head, whereby the collision of the cars would not have injured him; but the reargument and further examination of the evidence satisfies us that the case is distinguishable from *Richie's Case*, and that the plaintiff, having no reason to apprehend other cars on the track, but having every reason, growing out of the express orders of the conductor, to suppose there were none, was justified, so far as danger from that source was concerned, in taking

[Learned-Letcher Lumber Co. v. Ohatchie Lumber Co.]

any convenient position to do the important work of stopping the cars moving on the down grade. We, therefore, hold that the evidence entitled the plaintiff to recover.

Ordinarily, we would assess the plaintiff's damages, and render judgment here. The record so presents the evidence of plaintiff's injuries as to render an assessment of damages quite unsatisfactory. It is manifest that the most material inquiry is whether the hernia caused by the injury is permanent. Dr. Drennen was of opinion it could not be cured. Dr. Wyman was of opinion it could be cured by an operation, but not without it. He said, however, that such operations often fail; that he could not say whether or not they fail oftener than they succeed. He does not seem to have been asked as to the nature of the operation—whether a simple one, free from any just apprehension of danger, to which a person ought to submit, if it held out reasonable hope of cure, or a dangerous or extremely painful one, to which a person ought not to be required by a wrongdoer to submit, against his will. The trial occurred about nine months after the injury. Since then two years have elapsed. With very much greater certainty can the court now determine the permanency of the injury than at the former trial. The act creating the city court provides in reference to non-jury cases, on appeal, that, if this court finds there is error, it shall render such judgment in the cause as the court below should have rendered, or reverse and remand the same for further proceedings, as to it shall seem right. We think, under the circumstances stated, we subserve justice by remanding the cause for another trial.

Reversed and remanded.